**UNITED STATES DISTRICT COURT**            **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| BRANDON THOMAS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 1:22-CV-360 |
| | § | |
| GRETCHEN HARGRODER, SCOTT | § | |
| SKINNER, and UBS FINANCIAL | § | |
| SERVICES, INC., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the court is Plaintiff Brandon Thomas's ("Thomas") Opposed Motion to Remand (#10), wherein Thomas requests the court to remand this action to state court. Thomas contends that complete diversity does not exist among the parties because Thomas and Defendants Gretchen Hargroder ("Hargroder") and Scott Skinner ("Skinner") are citizens of Texas. Defendant UBS Financial Services ("UBS") filed a response (#19) arguing that removal was proper because Hargroder and Skinner were improperly joined as defendants, and thus, the court has diversity jurisdiction over this matter. Having considered the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

Thomas is a former employee of UBS. Thomas worked at UBS for eight years prior to his separation from the corporation. UBS terminated Thomas's employment on March 10, 2022, after a meeting that was the culmination of a nearly four-month-long investigation. Three UBS officials, namely, Hargroder, Skinner, and an official from UBS's Human Resources Department,

attended this meeting.  The basis for his termination, provided to Thomas during the meeting, was his "failure to disclose the opening of a personal account [with] a transfer agent where shares were purchased with Thomas'[s] personal funds[.]"  UBS accused Thomas of using personal funds to trade securities in his wife's name, without disclosing these purchases to the corporation.  During this meeting, the officials declared that Thomas's actions violated UBS policy.

Thomas later received a letter from UBS, dated March 31, 2022, containing a copy of his Uniform Termination Notice for Securities Industry Registration ("Form U-5").  The Form U-5 is the official Financial Industry Regulatory Authority ("FINRA") form used by broker-dealer and investment adviser firms to disclose why an individual was separated from a particular firm.  The Form U-5 is the form which BrokerCheck[1] uses to provide information to the general public regarding a broker's professional background.[2]  On Thomas's initial Form U-5, UBS listed the reason for his termination as:

> Employee was discharged after review determined he violated firm policies by purchasing equity shares directly from a transfer agent without prior approval, transferring those shares into a new account opened in wife's name after approval was denied and he was directed to close external account, and failing to be [forthcoming] to the MSO when requesting to purchase shares outside of UBS without informing [UBS he] had already made the purchase.

This explanation was consistent with the reasons for his termination that Hargroder and Skinner expressed to him during their March 10, 2022, meeting.  Dissatisfied with the explanation

---

[1] BrokerCheck is an online tool, created by FINRA, that provides information regarding the backgrounds of investment brokers, advisers, and firms.

[2] According to Thomas's pleadings, BrokerCheck pulls information from the Form U-5 and the Uniform Application for Securities Industry Registration or Transfer ("Form U-4").  The Form U-4 is used by representatives of broker-dealers and investment advisers to register with the appropriate jurisdictions and self-regulatory organizations.

presented on his initial Form U-5, Thomas filed a claim with FINRA in an effort to expunge some of the statements "due to their inaccuracy and lack of specific details that provide key context on his termination." The FINRA arbitration process is ongoing.

In early August 2022, while Thomas was continuing to seek other employment, he discovered that his Form U-5 had been amended without any notice to him. The amended entry listed Thomas's reason for termination as:

> Discharged after review[ ] determined employee violated firm policies by accepting orders via email without verbally confirming with client and not being forthcoming when questioned regarding the trades; communicating with a third party regarding two [ ] client accounts; and sending CID and "Internal Use Only" documents to a personal email.

These new grounds for Thomas's termination were erroneous and were not mentioned during the March 10, 2022, meeting. Thomas asserts that the amended Form U-5[3] is harmful to his reputation and job prospects because it calls into question his trustworthiness and transparency. Additionally, Thomas's father is also employed at UBS and is approaching retirement. Thomas alleges that the amended Forms were filed in part to ensure that Thomas would not be able to succeed his father and take over management of his father's accounts.

On August 22, 2022, Thomas filed his original petition in the 136th Judicial District Court of Jefferson County, Texas, alleging that Defendants intentionally filed the erroneous Form U-5

---

[3] In his petition, Thomas contends that Hargroder, Skinner and UBS (collectively, "Defendants") amended both his Form U-4 and Form U-5 ("Forms"). Although the court is not in possession of the amended Form U-4, the court infers that the information set forth on it is consistent with the amended Form U-5, because Thomas details only the content of the Form U-5 in his petition. Therefore, when the court discusses the amended Forms, it is discussing the Form U-5 and the Form U-4 to the extent it, too, was altered.

in an attempt to injure his career.[4]  In the original petition, the operative pleading at the time of removal, Thomas alleges claims against Defendants for defamation and intentional infliction of emotional distress ("IIED").  According to Thomas, Defendants colluded "to fabricate a much more damning basis for his termination, slander Thomas, and make him virtually unemployable at other firms or in another industry that requires employer and client trust."  Thomas claims that Defendants' motivation was to keep Thomas's father's accounts for themselves, punish him for filing his FINRA claim regarding the initial Form U-5, and to make him unemployable elsewhere in order to prevent him from competing.

On September 1, 2022, UBS removed the case to federal court on the basis of diversity of citizenship, alleging that complete diversity exists among the real parties in interest and that the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  It is undisputed that Thomas, Hargroder, and Skinner are citizens and residents of the State of Texas and that UBS is a Delaware corporation, with its principal place of business in the State of New Jersey.  UBS argues that Hargroder and Skinner were improperly joined so as to defeat diversity.  UBS asserts that because Hargroder and Skinner were fraudulently joined as defendants to defeat diversity, they should be dismissed as parties to this action and their citizenship ignored for jurisdictional purposes.  On October 3, 2022, Thomas filed a motion to remand the case to state court, contending that Hargroder and Skinner were properly joined, and, therefore, because complete diversity does not exist among the parties, federal jurisdiction is lacking.

---

[4] On August 23, 2022, Thomas applied for and obtained a temporary restraining order from the state court that precluded Defendants from further altering his Forms.

II.     Analysis

A.     Removal Jurisdiction

"Federal courts are courts of limited jurisdiction." *Home Depot U.S.A., Inc. v. Jackson*,

___ U.S. ___, 139 S. Ct. 1743, 1746 (2019) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994)); *accord Gunn v. Minton*, 568 U.S. 251, 256 (2013); *Williams v.

Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 816 (5th Cir. 2021); *Gonzalez v. Limon*, 926 F.3d 186,

188 (5th Cir. 2019); *Quinn v. Guerrero*, 863 F.3d 353, 359 (5th Cir. 2017), *cert. denied*, 138 S.

Ct. 682 (2018).   "They possess only that power authorized by Constitution and statute, which is

not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377; *accord Gonzalez*, 926 F.3d

at 188.  The court "must presume that a suit lies outside [its] limited jurisdiction, and the burden

of establishing federal jurisdiction rests on the party seeking the federal forum." *Gonzalez*, 926

F.3d at 188 (quoting *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.), *cert. denied*, 534

U.S. 993 (2001)); *accord Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *Settlement Funding,

L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017).  In an action that has been

removed to federal court, a district court is required to remand the case to state court if, at any

time before final judgment, it determines that it lacks subject matter jurisdiction.  *See* 28 U.S.C.

§ 1447(c); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009); *Powerex Corp. v.

Reliant Energy Servs., Inc.*, 551 U.S. 224, 231-32 (2007); *Atkins v. CB&I, L.L.C.*, 991 F.3d 667,

669 n.1 (5th Cir. 2021); *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468

(5th Cir. 2020); *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018).

When considering a motion to remand, "[t]he removing party bears the burden of showing

that federal jurisdiction exists and that removal was proper." *Barker v. Hercules Offshore Inc.*,

713 F.3d 208, 212 (5th Cir. 2013) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)); *accord Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020); *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 611 (5th Cir. 2018); *see* 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3602.1 (3d ed. 2013). "This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal statute." *Leboeuf v. Hatle*, No. 20-105, 2020 WL 1074952, at *1 (E.D. La. Mar. 6, 2020) (citing *Roth v. Kiewit Offshore Servs., Ltd.*, 625 F. Supp. 2d 376, 382 (S.D. Tex. 2008)); *accord Hernandez v. State Farm Lloyds*, No. DR-16-CV-164-AM/CW, 2017 WL 8131570, at *2 (W.D. Tex. Sept. 19, 2017); *Fort Worth & W. R.R. Co. v. Stevenson*, No. 3:15-CV-0906-B, 2015 WL 3867906, at *1 (N.D. Tex. June 22, 2015). "Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)); *see Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013); *In re 1994 Exxon Chem. Fire*, 558 F.3d 378, 395 (5th Cir. 2009).

"The removal statute ties the propriety of removal to the original jurisdiction of the federal district courts." *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 922 (5th Cir. 1997); *see* 28 U.S.C. § 1441(a); *Grace Ranch, L.L.C. v. BP Am. Prod. Co.*, 989 F.3d 301, 307 (5th Cir. 2021); *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 295 (5th Cir. 2019); *Allen*, 907 F.3d at 183. Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Valencia v. Allstate Tex. Lloyd's*, 976 F.3d 593, 595 (5th Cir. 2020); *Settlement Funding, L.L.C.*, 851 F.3d at 536; *Afr. Methodist Episcopal*

*Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014); *Barker*, 713 F.3d at 212.  In short, any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Vantage Drilling Co. v. Hsin-Chi Su*, 741 F.3d 535, 537 (5th Cir. 2014) (quoting *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir.), *cert. denied*, 530 U.S. 1229 (2000)); *accord Allen*, 907 F.3d at 183; *Afr. Methodist Episcopal Church*, 756 F.3d at 793.

B.   Diversity Jurisdiction

Federal courts have subject matter jurisdiction and are authorized to entertain causes of action only where a question of federal law is involved or where there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  28 U.S.C. §§ 1331, 1332; *Home Depot U.S.A., Inc.*, 139 S. Ct. at 1746; *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005); *Energy Mgmt. Servs., LLC v. City of Alexandria*, 739 F.3d 255, 258-59 (5th Cir. 2014).   In order to determine whether jurisdiction is present in a removed action, the claims set forth in the state court petition are considered as of the date of filing and the date of removal.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 594 (2013); *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71 (2004); *Moss v. Princip*, 913 F.3d 508, 514 (5th Cir. 2019); *Ashford v. Aeroframe Servs., LLC*, 907 F.3d 385, 386-87 (5th Cir. 2018); *Flagg v. Stryker Corp.*, 819 F.3d 132, 137 (5th Cir. 2016).  In removed cases where, as here, there is no suggestion that a federal question is involved, subject matter jurisdiction exists only if there is complete diversity among the parties and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332; *Lincoln Prop. Co.*, 546 U.S. at 89; *Exxon Mobil Corp.*, 545 U.S. at 552; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Complete diversity requires that no plaintiff be a citizen of the same state as any defendant. *Exxon Mobil Corp.*, 545 U.S. at 552; *Lewis*, 519 U.S. at 68; *Moss*, 913 F.3d at 514; *Vaillancourt v. PNC Bank Nat'l Ass'n*, 771 F.3d 843, 847 (5th Cir. 2014).  "In cases removed from state court, diversity of citizenship must exist both at the time of filing in state court and at the time of removal to federal court." *Ashford*, 907 F.3d at 386-87 (quoting *Coury v. Prot*, 85 F.3d 244, 249 (5th Cir. 1996)); *see Grupo Dataflux*, 541 U.S. at 570-71; *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009).  Furthermore, removal is appropriate only if none of the parties properly joined and served as a defendant is a citizen of the state in which the action was brought.  *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *In re 1994 Exxon Chem. Fire*, 558 F.3d at 391; *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (citing 28 U.S.C. § 1441(b)(2)).

C.  <u>Improper Joinder</u>

In the case at bar, although there is no dispute that Thomas and UBS are citizens of different states and that more than $75,000.00 is at issue, complete diversity may still be lacking because Thomas, Hargroder, and Skinner are citizens of Texas.  Therefore, to establish the existence of diversity jurisdiction, UBS must show that both Hargroder and Skinner were improperly joined as defendants to this action.  *See Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511, 514-15 (5th Cir. 2021); *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *Mumfrey*, 719 F.3d at 401; *In re 1994 Exxon Chem. Fire*, 558 F.3d at 384-85.  In determining whether defendants were improperly joined, the "focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Hicks*, 12 F.4th at 515 (quoting *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004), *cert. denied*, 544 U.S. 992 (2005)); *accord Int'l Energy*

*Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200 (5th Cir. 2016); *McDonal v. Abbott Labs.*, 408 F.3d 177, 183-84 (5th Cir. 2005).  The removing party bears the heavy burden of proving that non-diverse defendants have been fraudulently joined to defeat diversity, either by showing (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse parties in state court.  *Foster v. Deutsche Bank Nat'l Tr. Co.*, 848 F.3d 403, 406 (5th Cir. 2017); *accord Waste Mgmt. v. AIG Specialty Ins. Co.*, 974 F.3d 528, 533 (5th Cir. 2020); *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017); *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 199.  There is no difference between the terms "improper joinder" and "fraudulent joinder" in the context of removal jurisdiction.  *See Hoyt*, 927 F.3d at 303; *Smallwood*, 385 F.3d at 571 n.1.

A determination of improper joinder must be based on an analysis of the causes of action alleged in the petition at the time of filing and at the time of removal.  *Brown v. Wright Nat'l Flood Ins. Co.*, No. 20-30525, 2021 WL 2934730, at *4 (5th Cir. July 12, 2021) (explaining that "the plaintiff's pleading that is to be considered in determining the existence of diversity jurisdiction is the one that is operative 'at the time of . . . removal'" (quoting *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939))); *Lassberg v. Bank of Am., N.A.*, 660 F. App'x 262, 266 (5th Cir. 2016); *Borden*, 589 F.3d at 171; *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).  Where the defendant maintains that federal jurisdiction is proper, the court must evaluate all the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff, and then examine relevant state law and resolve all uncertainties in favor of the nonremoving party.  *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *Barker*, 713 F.3d at 212; *Campbell v.*

*Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007).  Furthermore, the "court must normally assume all the facts as set forth by the plaintiff to be true." *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir. 1983), *cert. denied*, 464 U.S. 1039 (1984)); *accord Cuevas v. BAC Home Loan Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

A district court should ordinarily resolve claims of improper joinder by conducting a Rule 12(b)(6)-type analysis.  *Hicks*, 12 F.4th at 515; *McDonal*, 408 F.3d at 183 n.6; *see Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 205; *Afr. Methodist Episcopal Church*, 756 F.3d at 793 ("The federal court's inquiry into the reasonable basis for the plaintiff's state court recovery is a Rule 12(b)(6)-type analysis."); *Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005) ("A motion to remand is normally analyzed with reference to the well-pleaded allegations of the complaint, which is read leniently in favor of remand under a standard similar to Rule 12(b)(6)."); *Smallwood*, 385 F.3d at 573.  If a plaintiff can survive a Rule 12(b)(6)-type challenge, there is generally no improper joinder." *Hicks*, 12 F.4th at 515 (quoting *Smallwood*, 385 F.3d at 573); *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 208; *Mumfrey*, 719 F.3d at 401; *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005).  Generally, the court should "limit itself to the contents of the pleadings, including the attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Nonetheless, the court may consider documents attached to a motion or an opposition to a motion when "the documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).

In the instant case, because UBS does not claim actual fraud in Thomas's recitation of jurisdictional facts, UBS must demonstrate that there is no possibility that Thomas could establish a cause of action against Hargroder or Skinner in state court.  *See Hicks*, 12 F.4th at 515; *Foster*, 848 F.3d at 406; *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 205; *Afr. Methodist Episcopal Church*, 756 F.3d at 793; *Mumfrey*, 719 F.3d at 401.  In other words, the court should find improper joinder if "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."  *Alviar*, 854 F.3d at 289 (quoting *Smallwood*, 385 F.3d at 573 (rejecting all other phrasings)); *see Hicks*, 12 F.4th at 515; *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 205; *Mumfrey*, 719 F.3d at 401.  "Nevertheless, 'a mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder.'"  *Gonzales v. Bank of Am.*, 574 F. App'x 441, 443 (5th Cir. 2014) (quoting *Smallwood*, 385 F.3d at 573 n.9); *see Ayala v. Enerco Grp., Inc.*, 569 F. App'x 241, 245 (5th Cir. 2014); *Bukowski v. Liberty Ins. Corp.*, No. SA-22-CV-0272-JKP, 2022 WL 1625173, at *2 (W.D. Tex. May 20, 2022); *Grant v. Casas*, No. 5:21-CV-05-DAE, 2021 WL 2792431, at *2 (W.D. Tex. Mar. 4, 2021).  "If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved,' then there is no [improper] joinder," and the case must be remanded for lack of diversity.  *Great Plains Tr. Co.*, 313 F.3d at 312 (quoting *Badon*, 236 F.3d at 286); *see Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 402 (5th Cir. 2004); *Smallwood*, 385 F.3d at 589-90; *Bukowski*, 2022 WL 1625173, at *3.

In assessing whether a plaintiff could possibly establish a claim against a non-diverse defendant, the court must apply the law of the state in which the action was brought—in this case, Texas.  *See Travis v.. Irby*, 326 F.3d 644, 647 (5th Cir. 2003); *Hart v. Bayer Corp.*, 199 F.3d

239, 247 (5th Cir. 2000).   "[W]hether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiff['s] allegations and the pleaded theory of recovery."  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999); *see Burden*, 60 F.3d at 218-21; *Speiser v. AmGUARD Ins. Co.*, No. CV H-22-1595, 2022 WL 3349312, at *3 (S.D. Tex. Aug. 12, 2022).  The United States Court of Appeals for the Fifth Circuit has held unequivocally that "[a] federal court must apply the federal pleading standard" when determining whether a plaintiff has a reasonable basis for recovery under state law.  *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 208; *see Waste Mgmt., Inc.*, 974 F.3d at 533. Furthermore, the Fifth Circuit instructs that, in the absence of a decision to "pierce the pleadings

and conduct a summary inquiry," the court *must* conduct a Rule 12(b)(6)-type analysis.[5]   *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 207-08;   *accord Hicks*, 12 F.4th at 515; *Waste Mgmt., Inc.*, 974 F.3d at 533.   Specifically, the court must consider whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face" against the in-state defendant.   *Hicks*, 12 F.4th at 515 (quoting *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 208); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Waste Mgmt., Inc.*, 974 F.3d at 533.   If the plaintiff's claim does not survive the Rule 12(b)(6) inquiry, the court must dismiss

---

[5] In UBS's response, it cites to the declarations of Hargroder, Skinner, and John Mark Baccus ("Baccus") (the head of Americas Licensing, Registration, Regulatory, and Sales practice Reporting for UBS).   These declarations were attached to UBS's Notice of Removal (#1).   In both Hargroder's and Skinner's declarations, they state that they were "not involved in the filing of [Thomas's Form] U-5," that they did not "have any involvement or input into any amendment to [Thomas's Form] U-5," and that they did not communicate with "anyone who works on the Legal and Regulatory [Disclosure] Team ("Disclosure Team") about the contents of the Form U-5 or any amendments to the Form U-5."   Baccus's declaration is more enlightening.   Baccus states that on March 24, 2022, he "sent an email to the UBS [ ] Disclosure Team that manages the filing of FINRA [Form] U-5s on behalf of the firm, advising that a Form U-5 Termination needed to be filed for Financial advisor [ ] Thomas."   Baccus's email contained Thomas's Central Registration Depository ("CDR") number and set forth the basis for Thomas's termination.   Unrelated to Thomas's termination, "on or about July 13, 2022, [Baccus] sent an email to the [ ] Disclosure Team regarding a Form U-5 Termination [ ] to be filed for a different former employee."   Upon review of his emails, Baccus determined that he "mistakenly used the template [Form] U-5 from [ ] Thomas's filing . . . when preparing the [Form] U-5 for the subsequent employee."   In doing so, Baccus believes that he "failed to change the CRD number to that of the [subsequent] former employee."   Thus, Baccus states that the later transmission mistakenly referred to Thomas and that the Disclosure Team understood this to be an amendment to Thomas's Form U-5 instead of a new filing for a different employee.   Moreover, Baccus explains that Hargroder and Skinner were not involved in this process.   In some cases, a court may pierce the pleadings and consider affidavits attached to a defendant's response to a motion to remand.   *Smallwood*, 385 F.3d at 573; *see Patton v. Nike, Inc.*, No. 4:14-CV-631, 2015 WL 1737781, at *1 (E.D. Tex. Apr. 7, 2015); *Garcia v. LG Elecs. USA Inc.*, No. CIV.A. B-11-61, 2011 WL 2517141, at *4 (S.D. Tex. June 23, 2011).   Where "a plaintiff states a claim, '[b]ut has misstated or omitted discrete facts that would determine the propriety of joinder' . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry . . . to identify the presence of discrete and undisputed facts that would preclude recovery against the in-state defendant."   *Garcia*, 2011 WL 2517141, at *4 (quoting *Smallwood*, 385 F.3d at 773-74).   Here, the question of improper joinder can be resolved based on the face of Thomas's petition alone.   Thus, the court need not "pierce the pleadings."

13

that party without prejudice as being improperly joined to defeat diversity jurisdiction. *Int'l Energy Ventures Mgmt., L.L.C.*, 818 F.3d at 209; *Probasco v. Wal-Mart Stores Tex., L.L.C.*, 766 F. App'x 34, 36 (5th Cir. 2019); *Alviar*, 854 F.3d at 291. *Sam v. Wells Fargo Bank, N.A.*, No. 4:15-CV-03194, 2016 WL 3002359, at *5 (S.D. Tex. May 20, 2016).

Under Rule 12(b)(6), "the plaintiff's complaint [must] be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *accord King v. Baylor Univ.*, 46 F.4th 344, 355 (5th Cir. 2022); *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1374 (2017). "Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 734 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Hence, "a complaint's allegations 'must make relief plausible, not merely conceivable, when taken as true.'" *Id.* (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009)); *see Hicks*, 12 F.4th at 515; *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) ("Though the complaint need not contain 'detailed factual allegations,' it must contain sufficient factual material to 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" (quoting *Iqbal*, 556 U.S. at 678)).

In conducting a Rule 12(b)(6) analysis, the court must also consider Federal Rule of Civil Procedure 8(a).  *Twombly*, 550 U.S. at 555.  Accordingly, a district court should not dismiss a complaint for failure to state a claim unless a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570; *accord King*, 46 F.4th at 355; *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir.), *cert. denied*, 567 U.S. 936 (2012); *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Coleman v. Sweetin*, 745 F.3d 756, 763 (5th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678); *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014).  "Essentially, 'the complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.'"  *Retana v. Twitter, Inc.*, 419 F. Supp. 3d 989, 993 (N.D. Tex. 2019) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995)), *aff'd*, 1 F.4th 378 (5th Cir. 2021).  "Plausibility is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *King*, 46 F.4th at 356 (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Thomas pleads causes of action for defamation and IIED against Hargroder and Skinner.  For remand to be proper, Thomas must allege sufficient facts to support a plausible claim for relief against Hargroder or Skinner for at least one of the causes of action he asserts.

15

1.    <u>Defamation</u>

To succeed on a defamation claim, the plaintiff must show that "(1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement [negligence if the plaintiff is a private individual and malice if the plaintiff is a public official]; and (4) damages [unless the statement constitutes defamation per se]." *D Mag. Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 434 (Tex. 2017) (citing *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015)); *WFAA -TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (noting that the degree of fault required regarding the truth of the statement is malice if the plaintiff is a public official and negligence if the plaintiff is a private citizen); *Klentzman v. Brady*, 312 S.W.3d 886, 897 (Tex. App.—Houston [1st Dist.] 2009, no pet.).   Defamation is an intentional tort.  *See Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 641 n.4 (S.D. Tex. 2001); *Riggs v. City of Pearland*, 177 F.R.D. 395, 405 (S.D. Tex. 1997); *Collins v. Ison-Newsome*, 73 S.W.3d 178, 182 (Tex. 2001).   "In Texas, a statement is defamatory libel by statute if it 'tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation.'" *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637-38 (Tex. 2018) (quoting TEX. CIV. PRAC. & REM. CODE § 73.001); *Miller v. Bruce*, 60 F. Supp. 2d 620, 626 (S.D. Tex. 1999), *aff'd*, 220 F.3d 584 (5th Cir. 2000); *Marshall v. Mahaffey*, 974 S.W.2d 942, 949 (Tex. App.—Beaumont 1998, pet. denied); *Abbott v. Pollock*, 946 S.W.2d 513, 519 (Tex. App.—Austin 1997, writ denied).   Additionally, under Texas common law, "a statement is defamatory per se when it is 'so obviously harmful that general damages, such as mental anguish and loss of reputation, are presumed.'"  *Tatum*, 554 S.W.3d at 638 (quoting *Lipsky*, 460 S.W.3d at 596).

For Thomas to state a defamation claim against Hargroder and Skinner, he must first plead facts that plausibly establish they participated in publishing the alleged defamatory statement. *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *5 (N.D. Tex. Dec. 29, 2015) (citing *WFAA -TV, Inc.*, 978 S.W.2d at 571). In UBS's response, it argues that Thomas's petition "utterly failed to aver that Hargroder or Skinner participated in the publication of the [Form] U-4 or U-5 in which he was allegedly defamed." Thomas contends that his "petition sufficiently alleges participation and actions by Skinner and/or Hargroder in defaming Thomas." In his petition, Thomas alleges various facts connecting Hargroder and Skinner to the initial meeting where he was terminated, but he asserts only conclusory allegations with regard to Hargroder's and Skinner's playing any role in amending the Forms.

Thomas fails to allege facts sufficient to suggest that either Hargroder or Skinner participated in publishing the statements contained in the amended Forms. *See Smith v. Textile Rental Servs. Ass'n*, No. 3:20-CV-3178-B, 2021 WL 3565578, at *4 (N.D. Tex. Aug. 12, 2021) (finding that plaintiff failed to allege facts sufficient to suggest that defendants published allegedly defamatory statements in an article because the statements appeared without quotation or reference to defendants and authorship was attributed to another individual). In an effort to connect Hargroder and Skinner to the amended Forms, Thomas alleges generally that Hargroder and Skinner "colluded" with UBS in publishing the statements. Thomas contends that "Defendants unilaterally amended the Form U-5 without any notice to him, as well as the Form U-4." He further asserts that the statements were "defamatory and false," that "Defendants acted with actual malice," and that "[t]he filing of the amended, inconsistent, and incorrect Forms [ ] was intentional and designed to injure [him]." Thomas attempts to link Hargroder's and Skinner's

17

involvement in the initial investigation and decision to terminate him on March 10, 2022, to the subsequent amendment and publication of the amended Forms in July 2022.  Their prior involvement in the initial termination decision and meeting does not compel an inference that Hargroder and Skinner played some role in amending or publishing the amended Forms months later.

Thomas's allegations concerning Hargroder's and Skinner's involvement in the publication of the amended Forms are purely conclusory and do not describe any specific or actionable conduct by either individual.  *See Iqbal*, 556 U.S. at 678; *Waste Mgmt., Inc.*, 974 F.3d at 534; *Desperado Motor Racing & Motorcycles, Inc. v. Robinson*, No. CIV.A. H-09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010) (holding that a plaintiff did not state a plausible defamation claim where the plaintiff "failed to plead any facts in support of the publication element of his claims").  These threadbare allegations along with the recitation of the elements of a claim for defamation under Texas law are insufficient to state a plausible claim for relief.  *See Waste Mgmt., Inc.*, 974 F.3d at 534.  Thomas has set forth no viable connection between either Hargroder or Skinner and the publication of the amended Forms.[6]  His statements consist merely of "boilerplate legal allegations without factual matter supporting them." *Bermudez v. Indem. Ins. Co. of N. Am.*, No. 4:20-CV-538, 2020 WL 5544561, at *4 (E.D. Tex. Sept. 16, 2020); *Hayden v. Allstate Tex. Lloyds*, No. H-10-646, 2011 WL 240388, at *8 (S.D. Tex. Jan. 20, 2011) ("If

---

[6] The court acknowledges that Thomas points to questionable circumstances surrounding his termination.  Thomas alleges that he was in line to take over his father's accounts after his father's retirement.  He further claims that UBS paid out settlements due to other brokers' mishandling of client funds but retained those employees, while Thomas was terminated for conduct arguably less severe than that of many of the employees still employed by UBS.  While these facts may create some suspicion regarding Defendants' intentions with respect to Thomas's termination, they do not plausibly establish that Hargroder and Skinner participated in publishing the amended Forms.

Plaintiff merely names a non-diverse individual as a party and recites the words of the statute without pointing out facts that establish the claim, the paucity of factual allegations leads to the conclusion that the non-diverse individual has been named merely to defeat diversity.").  When conducting a Rule 12(b)(6)-type analysis, "[w]e do not . . . accept as true legal conclusions, conclusory statements, or 'naked assertions' devoid of 'further factual enhancement.'" *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678); *see Kelson v. Clark*, 1 F.4th 411, 416 (5th Cir. 2021); *Pseudonym v. E. Hous. Reg'l Med. Ctr.*, No. 4:17-CV-3277, 2018 WL 2392200, at *8 (S.D. Tex. Apr. 25, 2018), *adopted by* No. 4:17-CV-3277, 2018 WL 2390129 (S.D. Tex. May 25, 2018) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."). Thus, Thomas has not pleaded sufficient factual matter in his state court petition to support a defamation claim against either Hargroder or Skinner.[7]

### 2.    Intentional Infliction of Emotional Distress

To establish a cause of action for IIED, the plaintiff must demonstrate that:  (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe.  *Larson v. Hyperion Int'l Techs., L.L.C.*, 494 F. App'x 493, 496 (5th Cir. 2012); *Brennan v. Mercedes Benz USA*, 388 F.3d 133, 136 (5th Cir. 2004); *Hughes Training, Inc. v. Cook*, 254 F.3d 588, 594 (5th Cir. 2001), *cert. denied*, 534

---

[7] Although UBS argues, in the alternative, that the statements contained in the Forms are protected by "absolute privilege," because Thomas's failure to plead facts satisfying the publication element is dispositive as to his defamation claim against Hargroder and Skinner, the court need not address this argument.

U.S. 1172 (2002); *Doe v. Yackulic*, No. 4:18-CV-084-ALM-CAN, 2019 WL 1301998, at \*16 (E.D. Tex. Feb. 19, 2019), *adopted by* No. 4:18-CV-84, 2019 WL 1299364 (E.D. Tex. Mar. 21, 2019); *Hersh v. Tatum*, 526 S.W.3d 462, 468 (Tex. 2017); *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).  The high standard for "extreme and outrageous" is satisfied only when the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Hersh*, 526 S.W.3d at 468 (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)); *Hoffman-La Roche Inc.*, 144 S.W.3d at 445 (quoting *Twyman v. Twyman*, 855 S.W. 2d 619, 622 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d)); *accord Goins v. City of Houston*, No. H-20-1553, 2021 WL 2785344, at \*5 (S.D. Tex. June 8, 2021), *adopted by* No. 4:20-CV-1553, 2021 WL 2779312 (S.D. Tex. July 2, 2021).  In *Dean v. Ford Motor Credit Co.*, the Fifth Circuit explained that for liability to attach, "the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, 'Outrageous.'"  885 F.2d 300, 306 (5th Cir. 1989); *Cantu v. Guerra*, No. SA-20-CV-0746-JKP-HJB, 2021 WL 2652933, at \*10 (W.D. Tex. June 28, 2021); *Clayton v. Wisener*, 190 S.W.3d 685, 692 (Tex. App.—Tyler 2005, pet. denied).

"Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  *Ioppolo v. Rumana*, 581 F. App'x 321, 327 (5th Cir. 2014), *cert. denied*, 575 U.S. 984 (2015); *Johnson v. Merrell Dow Pharm., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992); *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir. 1991); *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 796; *Hoffman-La Roche Inc.*, 144 S.W.3d at 445; *Vermillion v. Vermillion*, No. 07-20-00111-CV, 2022 WL 4799019, at \*4 (Tex. App.—Amarillo Sept. 30, 2022, no pet.

h.) (citing *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).  "[I]t is only when such conduct becomes a regular and continuous pattern of behavior that it will rise to the level of extreme and outrageous conduct."  *Koehlar v. Vest*, Nos. 05-05-01366, 05-05-01710, 2007 WL 852879, at *3 (Tex. App.—Dallas Mar. 22, 2007, no pet.) (quoting *Gaspard v. Beadle*, 36 S.W.3d 229, 237 (Tex. App.—Houston [1st Dist.] 2001, pet. denied)).

UBS contends that Thomas "fails to even assert that Hargroder or Skinner engaged in extreme and outrageous conduct."  Moreover, UBS argues that even if Thomas were able to show that Hargroder and Skinner participated in amending the Forms, their conduct does not equate to extreme and outrageous conduct.  Thomas maintains, however, that his petition sufficiently alleges participation and actions by Hargroder and Skinner to state a claim for IIED.

As with Thomas's defamation claim, he has not stated facts plausibly establishing that Hargroder or Skinner participated in any extreme and outrageous conduct.  Specifically, Thomas alleges that "Defendants are liable for [IIED]. Defendants have acted intentionally or recklessly by colluding to amend the entry for the Form U-4 and U-5."  He further contends that "Defendants" acted intentionally and recklessly by amending the Forms in an effort to destroy his career.  Importantly, Thomas's IIED claim is premised on the same facts as his defamation claim. Therefore, as with his defamation claim, Thomas's allegations concerning Hargroder's and Skinner's involvement in the amendment of the Forms are conclusory and fail to describe specific or actionable conduct by either individual.  *See Iqbal*, 556 U.S. at 678; *Waste Mgmt., Inc.*, 974 F.3d at 534.  Thomas asserts no facts from which it could be inferred plausibly that Hargroder and Skinner participated in drafting or publishing the amended Forms or that they acted to destroy his career.  Thus, Thomas's allegations regarding Hargroder and Skinner are "legal conclusion[s]

masquerading as factual conclusion[s]." *Matthews v. Shoemaker*, No. CV 07-3813, 2008 WL 11515643, at *5 (E.D. La. Jan. 4, 2008); *see Bermudez*, 2020 WL 5544561, at *4; *Hayden*, 2011 WL 240388, at *8.

Furthermore, even if Thomas had pleaded sufficient facts from which it could be inferred that Hargroder and Skinner participated in preparing or releasing the amended Forms, it is questionable whether the conduct about which Thomas complains rises to the level required to state an IIED claim.[8]   Additionally, under Texas law, IIED "is a 'gap-filler' tort never intended to supplant or duplicate existing statutory or common-law remedies.  Even if other remedies do not explicitly preempt the tort, their availability leaves no gap to fill."  *Roe v. Patterson*, No. 4:19-CV-179-SDJ, 2022 WL 672692, at *10 (E.D. Tex. Mar. 7, 2022) (quoting *Creditwatch, Inc.*, 157 S.W.3d at 816); *Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1024 (S.D. Tex. 2018); *Roane v. Dean*, No. 03-19-00307-CV, 2020 WL 2078252, at *4 (Tex. App.—Austin Apr.

---

[8] Although this court need not reach the question, Thomas's allegations may "fail to demonstrate that Defendants engaged in extreme and outrageous conduct, much less that Defendants did so intentionally or even recklessly."  *Doe*, 2019 WL 1301998, at *16; *Diamond Shamrock Ref. & Mktg. Co. v. Mendez*, 844 S.W.2d 198, 202 (Tex. 1992) (holding that falsely depicting the plaintiff in the community as a thief is not sufficiently outrageous to raise a fact issue on outrageous conduct); *see, e.g.*, *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005) (dismissing a claim for intentional infliction of emotional distress based on a supervisor's alleged sexual advances and retaliatory conduct because even if true, the conduct "was callous, meddlesome, mean-spirited, officious, overbearing, and vindictive—but not so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."); *Sw. Bell Mobile Sys. v. Franco*, 971 S.W.2d 52, 54 (Tex. 1998) (finding evidence "far short of being legally sufficient" when showed plaintiffs were fired "in the unnecessary presence of coworkers," were forced "to collect and remove their belongings in front of others," and the employer "immediately took steps to repossess car phones"); *Wornick Co. v. Casas*, 856 S.W.2d 732, 735 (Tex. 1993) (holding that ordering employee to immediately leave the premises and having security guard escort employee out did not rise to the level of extreme and outrageous conduct).  "[T]he fact that an action is intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress."  *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999).

30, 2020, pet. dism'd).  The IIED claim was "created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Tu Nguyen*, 318 F. Supp. 3d at 1024 (quoting *Hoffmann–La Roche*, 144 S.W.3d at 447); *Roane*, 2020 WL 2078252, at *4.  Therefore, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Roe*, 2022 WL 672692, at *10 (quoting *Cunningham v. Politi*, No. 4:18-CV-362-ALM-CAN, 2019 WL 2517085, at *10 (E.D. Tex. Apr. 30, 2019)); *Roane*, 2020 WL 2078252, at *4.[9]

In sum, Thomas has failed to state either a defamation or an IIED claim against either Hargroder or Skinner.[10]  Hence, "there is no reasonable basis for the district court to predict that

_____

[9] Here, because Thomas's IIED claim is based on the allegedly defamatory statements made in the amended Forms, he has another remedy, and the gap-filler tort is superfluous.  *Roe*, 2022 WL 672692, at *10 (holding that the plaintiff's IIED claim must be dismissed because the gravamen of her IIED claim amounts to a straightforward defamation claim); *Cunningham*, 2019 WL 2517085, at *10 (recommending dismissal of plaintiff's IIED claim when it was based on the same facts as his defamation claim); *Tu Nguyen*, 318 F. Supp. 3d at 1024 (holding that where all of plaintiff's IIED claims are based on the allegedly defamatory statements of the defendants, he has another remedy and dismissal is proper); *Melcher v. Small Bus. Loan Source, LLC*, No. G-14-288, 2016 WL 1211800, at *2 (S.D. Tex. Mar. 9, 2016) (holding that a plaintiff's claim for IIED must be dismissed because other tort claims are potentially available and, as a result, there is simply no gap to fill), *adopted by* No. 3:14-CV-288, 2016 WL 1274485 (S.D. Tex. Mar. 28, 2016).  Thus, although Thomas's IIED claims against Hargroder and Skinner fail because he has not pleaded facts linking them to the amended Form U-5, it is of note that such a claim is not actionable in this context.

[10] As UBS contends in its response to Thomas's motion to remand, Texas does not allow injunctive relief in defamation cases.  *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983).  In *Hajek*, the Texas Supreme Court held that "[d]efamation alone is not a sufficient justification for restraining an individual's right to speak freely." *Id*. (citing *Ex parte Tucker*, 110 Tex. 335, 220 S.W. 75, 76 (1920)).  Under the Texas Constitution, temporary injunctions in this context constitute prior restraints on free speech.  *Id*. (citing Tex. Const. art. I, § 8).  In this case, defamation is the gravamen of Thomas's petition, and due to the fact that IIED is a only a gap-filler tort, there is no gap left to fill in this situation.  Thus, to the extent Thomas seeks a temporary injunction in this court, such a request is without legal basis.

the plaintiff might be able to recover against an in-state defendant[s]." *Alviar*, 854 F.3d at 289 (quoting *Smallwood*, 385 F.3d at 573); *see Hicks*, 12 F.4th at 515; *Int'l Energy Ventures Mgmt.*, *L.L.C.*, 818 F.3d at 205; *Mumfrey*, 719 F.3d at 401.  Accordingly, because joinder of the in-state defendants was improper, Hargroder and Skinner must be dismissed as parties to this lawsuit. Thus, diversity of citizenship exists, and remand is not warranted.

III.   <u>Conclusion</u>

An evaluation of the relevant facts and controlling law reveals that this court has subject matter jurisdiction over this action.  Although no federal question is presented, complete diversity of citizenship exists between the parties, as the in-state defendants were improperly joined, and neither party has challenged that the amount in controversy exceeds $75,000.00.  Therefore, this case was properly removed, and remand is not warranted.

Accordingly, Thomas's Motion to Remand (#10) is DENIED.  Because Hargroder and Skinner were improperly joined as defendants in this lawsuit, they are DISMISSED as parties to this action.

SIGNED at Beaumont, Texas, this 14th day of December, 2022.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE

24